IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00755-JLK

SALVADOR T. JIMENEZ,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

___

ORDER
___

Kane, J.

Plaintiff Salvador T. Jimenez filed an application for Supplemental Security Income ("SSI") benefits nearly eight years ago and now appeals, for the second time, the decision of the Acting Commissioner of Social Security ("Commissioner") denying his application. Following Jimenez's first appeal, Magistrate Judge Michael E. Hegarty reversed and remanded the case on the basis that the Administrative Law Judge ("ALJ") failed to sufficiently specify and explain his reasons for assigning various weight to the medical opinions regarding Jimenez's physical impairments. [*See* Administrative Record ("AR") 545-46.]

Jimenez now argues that, in his second decision, the ALJ did not properly weigh the opinions on his mental impairments and erred in not sufficiently including limitations for Jimenez's mental impairments in his residual functional capacity ("RFC"). Because the ALJ repeatedly failed to properly weigh medical opinions, and because his RFC findings are not supported by substantial evidence, I REVERSE and REMAND for an immediate award of

1

benefits.

## I. LEGAL STANDARD

To qualify for SSI, a claimant must be disabled and must be eligible based on his income and resources. 42 U.S.C. § 1381a. A claimant can only be found to be disabled "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). Additionally, a claimant's physical or mental impairments must be "medically determinable" and "expected to result in death or [have] lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); 20 C.F.R. § 416.905. When a claimant has one or more physical or mental impairments, the Commissioner is required to consider the combined effects in making a disability determination. 42 U.S.C. § 1382c(a)(3)(G).

"[T]he ALJ has a duty to ensure that an adequate record is developed during the [SSI] hearing consistent with the issues raised." *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (quotation omitted). In evaluating disability, the ALJ must follow a five-step sequential protocol. 20 C.F.R. § 416.920(a)(4). Should the ALJ find at any step that the claimant is not disabled, the process need go no further. *Id.* The claimant bears the burden of proof regarding the first four steps, and the Commissioner must satisfy the fifth. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At step one, the ALJ must find that the claimant is not engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ must deem the claimed impairment to be severe, medically determinable, and of sufficient duration. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ will consider whether the claimant's impairment

meets or equals in severity one of those listed in 20 CFR Part 404, Subpart P, Appendix 1, and if it does, the ALJ will find the claimant to be disabled. *Id.* § 416.920(a)(4)(iii). Otherwise, the analysis moves on to the fourth step at which the ALJ must determine the claimant's residual functional capacity. *Id.* § 416.920(a)(4)(iv). Based on that RFC, the ALJ must find that the claimant cannot perform any of his past relevant work. *Id.* Finally, at step five, the Commissioner has the burden of showing that the claimant's RFC, age, education, and work experience would allow him to adjust to other work. *Id.* § 416.920(a)(4)(v). If the Commissioner cannot make such a showing, the claimant must be found to be disabled. *Id.*

I must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "It requires more than a scintilla, but less than a preponderance." *Id.* Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). In reviewing the Commissioner's decision, I may not reweigh the evidence or substitute my judgment for that of the agency, but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan,* 399 F.3d at 1262 (citation omitted).

## II. BACKGROUND

Jimenez filed his application for SSI benefits on January 15, 2010. [AR 169-175.] He reported that he was limited in his ability to work by neck and lower back problems, numbness,

3

shoulder pain, and depression. [AR 195.] After his application was denied, Jimenez requested a hearing before an ALJ. The ALJ found that Jimenez was not disabled and therefore not entitled to SSI benefits. [AR 14-25.] Because the Appeals Council denied review, the ALJ's decision, filed on March 19, 2012, became the Commissioner's final decision. [AR 1-5.] Jimenez sought judicial review of the decision, and Magistrate Judge Hegarty reversed and remanded the case on the basis that the ALJ failed to sufficiently specify and explain his reasons for weighing the medical opinions on physical impairments. [AR 545-46.] Remand proceedings before the same ALJ resulted in another unfavorable decision, filed on May 4, 2015, and the Appeals Council refused to take corrective action, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. [AR 468.] Jimenez now appeals the second denial of benefits, arguing that the ALJ did not properly weigh the opinions of Jimenez's mental impairments and erred in not sufficiently accounting for the mental limitations in his residual functional capacity findings. Jimenez raised similar issues in his first appeal before Magistrate Judge Hegarty, but the court had no need to address them after finding grounds for reversal in the ALJ's weighing of the opinions on physical impairments. [AR 545.]

*Medical Evidence*

Because Magistrate Judge Hegarty's order provides a detailed and chronological recitation of Jimenez's medical record leading up to May 2014, and because Jimenez's second appeal focuses on the ALJ's assessment of his mental impairments, I need only repeat the pertinent facts here.

Jimenez was diagnosed with and began receiving treatment for depression in June 2009. [AR 254.] For his SSI application, Jimenez was referred to Dr. Brett Valette for a psychological evaluation on July 14, 2010. [AR 351.] Jimenez accused Dr. Valette of laughing at him during a

4

previous appointment and said Valette "denied" him. [AR 351-52.] Dr. Valette objected and told Jimenez he would not agree to see him if Jimenez believed Valette was just going to laugh at him. Jimenez "got mad" and "left," and Dr. Valette was not able to complete the examination or provide a diagnosis. [*Id.*] Jimenez was then referred to Dr. Richard Madsen for a psychological evaluation on August 19, 2010. Dr. Madsen wrote that Jimenez's "ability to do work related activities is impaired," and as a result he would have difficulty "relating to peers, coworkers, supervisors, and the general public." [AR 354-58.] Dr. Madsen noted Jimenez's "lifelong problems with . . . mood swings with depression and agitation," and concluded that he gets "explosive and assaultive" when agitated. [AR 358.] He further explained that Jimenez "has lost several jobs because of his anger management problems," and his "longest period of employment is only two to three month." [*Id.*]

State agency psychologist Gayle Frommelt evaluated the case record, including Dr. Madsen's examination report, and issued an RFC assessment on August 27, 2010. She indicated moderate limitations in both Jimenez's "ability to get along with coworkers" and his "ability to accept instructions and respond appropriately to criticism from supervisors." [AR 70.] At the end of the RFC assessment form, Dr. Frommelt concluded that Jimenez "retains the ability to follow simple instructions, sustain ordinary routines and make simple decisions. He can manage social interactions that are not frequent or prolonged. He should have limited contact [with the general] public." [*Id.*]

In December 2010, Jimenez underwent a "SyCare Initial Emergency Assessment" with mental health counselor Wayne Monk. Mr. Monk diagnosed Jimenez with post-traumatic stress disorder and depression. [AR 421, 426.]

Jimenez received mental health treatment at Spanish Peaks Mental Health Center ("Spanish Peaks") beginning in February 2011. A psychiatric mental health nurse practitioner, Mark Jankelow, diagnosed Jimenez with Recurrent Major Depressive Disorder; Psychosis; Possible Personality Disorder; and Hypertension. [AR 419.] Mr. Jankelow reported the same diagnosis on Jimenez's subsequent visits in June and August, 2011. [AR 412-13.] Mr. Jankelow completed an RFC evaluation for Jimenez on August 1, 2011, and ranked him with moderate to marked limitations in "understanding and memory"; mostly moderate to extreme limitations in "sustained concentration and persistence"; marked limitations in "social interaction"; and moderate to marked limitations in "adaptation." [AR 398-99.] He indicated that Jimenez is not mentally capable of attending work at any job 8 hours per day, 5 days per week, and estimated that Jimenez would be mentally off task for 75% of the work week. [AR 400.]

On August 2, 2011, Mr. Monk completed an RFC evaluation for Jimenez and ranked him with marked to extreme limitations in "understanding and memory"; marked to extreme limitations in "sustained concentration and persistence"; marked to extreme limitations in "social interaction"; and moderate to marked limitations in "adaptation." [AR 401-02.] Mr. Monk, like Mr. Jankelow, indicated that Jimenez is not mentally capable of attending work at any job 8 hours per day, 5 days per week, but he estimated that Jimenez would be mentally off task for 90% of the work week. [AR 403.]

Jimenez's records show that he continued to receive mental health treatment from Mr. Jankelow and others at Spanish Peaks through at least September 16, 2014. [AR 678-751.] In an evaluation on September 9, 2014, Mr. Jankelow noted that Jimenez's attention and concentration were poor. [AR 680.]

*Second Hearing and Decision*

In his second decision, the ALJ again found Jimenez was not disabled. As to the first step, it was uncontested that Jimenez was not engaged in substantial gainful activity. At step two, the ALJ determined Jimenez had a number of severe impairments: (1) degenerative changes of the cervical lumbar spine; (2) bi-polar disorder; (3) personality disorder; and (4) obesity. [AR 483.] At step three, the ALJ found that Jimenez's impairments did not meet or equal those listed in the applicable federal regulations. He evaluated the mental impairments using the "paragraph B" criteria and determined that they did not bring about episodes of decompensation, and only caused moderate limitations in activities of daily living, social functioning, and concentration, persistence or pace. [AR 485; 20 C.F.R. pt. 404, subpt. P, app.1, § 12.07.].[1]

The ALJ then defined Jimenez's RFC and concluded that Jimenez's physical and mental impairments were not disabling. He found Jimenez had the RFC to perform light work with the following restrictions: can only lift twenty pounds occasionally and ten pounds frequently; can only sit for two hours per day; can stand and/or walk for up to six hours per day; can occasionally bend, squat, and kneel; cannot climb ladders or scaffolds; cannot work over chest level; cannot deal with the general public but can occasionally deal with coworkers; and cannot perform complex tasks, such that he is limited to unskilled work. [AR 486.] In determining Jimenez's RFC, the ALJ discounted the opinions of Jimenez's mental health providers (Mr. Jankelow and Mr. Monk) and the opinion of the consultative examiner (Dr. Madsen). He gave preference to the opinion, or at least portions of the opinion, of the State agency consultant (Dr. Frommelt). [AR 494-96.] At step four, the ALJ found Jimenez has no past relevant work.

---

[1] To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. [AR 484.]

Based on the RFC provided by the ALJ, the vocational expert (VE) testified at the hearing that Jimenez could perform three jobs in the region: dry cleaning/laundry worker, housekeeper/cleaner, and pamphlet distributor. [AR 512-13.] However, the VE stated that there would be no competitive work for someone with the following additional restrictions: on an unpredictable basis, an inability to appropriately interact with the general public and to complete a normal workday and work week without interruptions from psychologically based symptoms; no ability to make simple, work-related decisions; and no ability to work in combination with or proximity to others. [AR 513.] On cross-examination by Jimenez's attorney, the VE stated that, of all the social interactions required in a work situation, the ability to interact with supervisors is the most critical because all jobs require some interaction with supervisors. [AR 514-15.] There is no mention of this favorable testimony in the ALJ's decision. Ultimately, the ALJ concluded that Jimenez was not disabled because he was capable of performing jobs that exist in significant numbers in the national economy. [AR 497.]

## III. DISCUSSION

With his second bite of the apple, the ALJ feigned compliance with Magistrate Judge Hegarty's order but, once again, did not properly assess the medical source opinions. Nor did he sufficiently include Jimenez's limitations from his mental impairments in his RFC.

A. Medical Opinions

The ALJ's findings regarding the weight to accord the medical source opinions are replete with errors.

*Opinion of Dr. Madsen and Weight Compared to Opinion of Dr. Frommelt*

First, the ALJ improperly weighed the opinion of Dr. Madsen, an examining source, as compared to the opinion of Dr. Frommelt, a non-examining consultative source. When there is

8

no opinion by a treating physician or a treating opinion does not merit controlling weight, an ALJ must consider the following six factors in determining how to evaluate and weigh other medical opinions on the record: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations. 20 C.F.R. § 416.927(c). "[A]n examining medical-source opinion is . . . presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (citations omitted). An ALJ may dismiss or discount an examining opinion, "but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must 'provide specific, legitimate reasons for rejecting it.'" *Id.* (citing *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)). Accordingly, the ALJ's justification for effectively rejecting (or, as the ALJ put it, giving "little weight" to) Dr. Madsen's findings is critical to the validity of the ALJ's decision. The ALJ gave Dr. Madsen's opinion little weight, in part, because it was rendered after a single exam and because Dr. Madsen did not review medical records prior to rendering his opinion. That Dr. Madsen's opinion was rendered after only one examination is not a proper reason to accord his opinion less weight than Dr. Frommelt's. This may be a valid reason not to give Dr. Madsen's findings the conclusive weight of a treating opinion, but "it is not by itself a basis for rejecting them." *Chapo*, 682 F.3d at 1291; *see also Kellams v. Berryhill*, 696 Fed. Appx. 909, 917 (10th Cir. 2017) (unpublished) (holding that the "ALJ erred in discounting [the examining physician's] opinion based on her single exam, yet according great weight to [the non-examining physician's] opinion, which was based on a review of the then-incomplete medical record"). And, while the ALJ may consider other factors such as "the extent to which a medical source is familiar with the other information in [a claimant's] case record,"

9

20 C.F.R. § 416.927(c)(6), it is quite a stretch to find that Dr. Frommelt's opinion is entitled to more weight than Dr. Madsen's simply because her conclusions were based upon a review of the medical record and his were based on an in-person evaluation.

That Dr. Madsen did precisely what examining physicians do, and Dr. Frommelt did precisely what non-examining physicians do, is not sufficient justification for discounting Dr. Madsen's opinion. Holding otherwise would contradict the regulatory presumption to ". . . give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." 20 C.F.R. § 416.927(c)(1).

The ALJ's other reasons for rejecting Dr. Madsen's opinion—that it was vague, not well explained, and inconsistent with the record as a whole—are equally flawed. The ALJ noted that Dr. Madsen's opinion "is of little utility in determining [Jimenez's] RFC" because it does not provide any indication as to the severity or frequency of the impairments. [AR 495.] Yet he failed to seek clarification or additional information regarding Dr. Madsen's report. When an ALJ finds a consultative physician's report to be "inadequate or incomplete," he should "contact the medical source who performed the consultative examination, give an explanation of [his] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 416.919p(b).

Accepting that the opinion is vague insofar as it does not quantify the extent of Jimenez's impairments, "the onus was on the ALJ to recontact [Dr. Madsen] for further clarification." *Gonzales v. Colvin*, 69 F.Supp.3d 1163, 1170 (D. Colo. 2014) (citing SSR 96-5p, 1996 WL

374183 at *6 (July 2, 1996)). Instead, the ALJ declined Dr. Madsen's offer of assistance and discounted his opinion without further inquiry.[2]

Finally, the ALJ's determination that Dr. Madsen's opinion is "inconsistent with the record as a whole," [AR 495.], is merely conclusory. He neither explains this statement nor points to any specific inconsistencies that would support his conclusion. I also note that in the first appeal, Magistrate Judge Hegarty rejected such conclusory statements regarding the opinions on physical impairments. [AR 543-44.]

*Opinion of Dr. Frommelt*

Even if the ALJ did not err in giving more weight to Dr. Frommelt's opinion than to Dr. Madsen's, he nevertheless failed to provide sufficiently specific, legitimate reasons for rejecting some portions of Dr. Frommelt's opinion while apparently accepting others. The Tenth Circuit has "repeatedly held that '[a]n ALJ may not pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo,* 682 F.3d at 1292 (citations omitted). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996). Although the ALJ did not expressly reject any particular part of Dr. Frommelt's opinion, he criticized and discounted the limitations on interaction with coworkers and supervisors as being unsupported by the evidence. [AR 494.] He delivered the same critique of both limitations, yet accounted for only the coworker limitation in the RFC. In doing so he raised, but did not answer, the question of why he rejected the supervisory limitation but ultimately included the coworker limitation.

---

[2] Dr. Madsen concluded his report with the note, "If I may be of any further assistance to you in this matter, please feel free to contact me." [AR 358.] However, nothing in the record indicates that the ALJ reached out to Dr. Madsen for clarification or additional explanation.

11

The ALJ appears to have rejected the interpersonal restrictions in Dr. Frommelt's opinion based upon his own speculative lay opinion that Jimenez "is generally noted to be pleasant and cooperative during his exams, indicating an ability to act in a socially appropriate manner around those [with] whom he has developed familiarity." [AR 494.] This is mere conjecture. "An ALJ cannot substitute her lay opinion for that of a medical professional," *Lax,* 489 F.3d at 1089, or "interpose his own 'medical expertise' over that of a physician*.*" *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987).

Dr. Frommelt recognized Jimenez's ability to engage with some treating sources, but noted that he gets easily defensive. [AR 70.] She considered Jimenez's history of domestic violence, assaults, marital conflicts, and trauma, and indicated moderate limitations in Jimenez's "ability to accept instructions and respond appropriately to criticism from supervisors" and "ability to get along with coworkers." [*Id.*] Conversely, the ALJ provided no medical evidence to support his conclusion that the ability to occasionally interact well with medical providers in exams correlates to an ability to interact appropriately with coworkers and supervisors. Nor did he state that any evidence, other than his own speculative opinion, conflicted with Dr. Frommelt's findings regarding Jimenez's social functioning limitations.

In crafting his opinion, the ALJ selectively ignored the more inimical interactions in Jimenez's medical record, such as the turbulent exchange with Dr. Brett Valette. [AR 351-52.] The SyCare Initial Emergency Assessment conducted on September 1, 2013, reported that Jimenez "can [] be very combative and uncooperative." [AR 708.] Indeed, a nurse at the hospital reported that during his triage, Jimenez threatened to "shoot his wife," though he could not remember making the threat when questioned. [AR 707.] Nevertheless, the ALJ plucked the most miniscule evidence of Jimenez's ability to engage appropriately with medical providers as

12

supposed proof that Jimenez is able to respond appropriately to coworkers and supervisors. His failure to acknowledge the episodic pattern of Jimenez's psychological symptoms suggests "cherry picking" of the record, which is improper. *See Chapo,* 682 F.3d at 1292. Moreover, I agree with Jimenez that a person's ability to interact appropriately at the occasional medical appointment does not indicate that he or she can maintain the level of appropriate socialization necessary for a full-time job.

 *Opinions of Monk and Jankelow*

 In addition to improperly weighing and explaining his reasons for discounting the opinions of the examining and non-examining sources (Drs. Madsen and Frommelt, respectively), the ALJ erred in discrediting the consistent opinions of mental health professionals who regularly treated Jimenez. Although nurse practitioners and mental health counselors are not 'acceptable medical sources,' 20 C.F.R. § 416.913(a), they are 'other sources' "whose evidence can be considered to show the severity of a claimant's impairment and how it affects his ability to work." 20 C.F.R. § 416.913(d); *Knight v. Astrue*, 388 Fed. Appx. 768, 772 (10th Cir. 2010) (unpublished). Opinions from these "other sources" must be considered and evaluated using the factors set out in 20 C.F.R. § 416.927(c), including the consistency of the opinion with other evidence. 20 C.F.R. § 416.927(c)(4). And, where there are inconsistencies between the opinions of the medical sources, "the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in [regulation]." *Reveteriano v. Astrue*, 490 Fed. Appx. 945, 947 (10th Cir. 2012) (unpublished). I note that the ALJ's conclusions as to Jimenez's abilities differed dramatically from the conclusions of Mr. Monk and Mr. Jankelow; a difference which the ALJ did not sufficiently explain. As previously noted, the medical sources' opinions on Jimenez's mental limitations are

largely consistent. Dr. Frommelt indicated moderate limitations in Jimenez's "ability to accept instructions and respond appropriately to criticism from supervisors," and Dr. Madsen wrote that Jimenez would have difficulty "relating to peers, coworkers, supervisors, and the general public." [AR 70, 354-58.] Mr. Jankelow indicated a marked impairment in ability to accept instructions and criticism from supervisors, and Mr. Monk indicated an extreme impairment in the same category. [AR 398-403.]

The ALJ discredited the opinions of Mr. Monk and Mr. Jankelow based, in part, on Jimenez's admission of "significant daily activities that are inconsistent with the information he gave in these mental health sessions." [AR 496.] That Jimenez's mental health providers often relied on his subjective reports of his symptoms is no basis for discrediting the medical source opinions. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("a psychological opinion may rest either on observed signs and symptoms or on psychological tests") (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)); *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759-60 (10th Cir. 2005) (unpublished) ("[t]he ALJ cannot reject [a medical provider's] opinion solely for the reason that it was based on [the claimant's] responses"). Furthermore, the ALJ failed to establish how Jimenez's performance of those daily living activities transferred to his "*maximum remaining ability to do sustained work activities in an ordinary work setting on a* **regular and continuing** basis." SSR 96-8p, 1996 WL 374184, at *2. "The sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (internal quotation marks omitted) (alteration in original). The ALJ has merely shown that some days Jimenez is capable of performing various tasks, but that does not amount to substantial evidence to discredit Jimenez or establish that he could perform similar tasks on a regular and continuing basis in an

14

ordinary work setting. *See Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (noting that "diversions" such as performing household chores and driving do not "establish, without more evidence, that a person is able to engage in a 'substantial gainful activity'").

To the extent the ALJ dismissed the opinions based on his own unsubstantiated conclusion that Jimenez was "maintaining mental treatment for the purpose of supporting his claim" [AR 496.], this is error. Jimenez's statement, as documented in summary form in a mental health treatment plan,[3] is open to more than one interpretation and does not substantiate the ALJ's conclusion. In fact, treatment notes from the same day indicate that one of Jimenez's treatment goals was to "be able to manage his depressive symptoms so he can engage with helpers to complete his SSI appeals process and complete the process for his in-home caregiver." [AR 496.] Becoming stable enough to participate in and complete the SSI appeals process is quite different than seeking mental health treatment for the sole purpose of obtaining benefits.

The ALJ next dismissed the opinions of Mr. Monk and Mr. Jankelow[4] because they were "not supported by the longitudinal treatment history" and "not accompanied by meaningful explanation concerning the ratings given." [AR 496.] Yet the other evidence complements, rather than undermines, the opinions of Mr. Monk and Mr. Jankelow with respect to social interaction limitations and limitations in the ability to adapt to changes in the work setting. [AR 70, 358.] And although Mr. Monk and Mr. Jankelow assessed greater functional limitations than Dr. Frommelt, they also had the most frequent interactions and longest treatment relationship with Jimenez of the medical sources. The ALJ's complaint that the statements of Mr. Monk and Mr.

---

[3] "I will know that I am ready to be discharged or transferred to a lower level of care when I have an outcome to my SSI appeal and/or my depression has decreased to a level that I can manage without therapy support." [AR 404.]

[4] After naming Mr. Jankelow as the signatory of the August 1, 2011 RFC form in his first decision, the ALJ then refused to recognize Mr. Jankelow as the author of that very same form because the signature was "not legible." [AR 23, 496.]

Jankelow lacked meaningful explanation does not withstand scrutiny given that the record is thick with treatment notes and findings lending context and support to their opinions. [*See* AR 404-20.] A more thorough analysis of the treatment records would have provided a better longitudinal picture of Jimenez's mental impairments than the ALJ's own lay opinion.

   B. Mental Impairments in RFC

Jimenez argues that the ALJ's improper treatment of the opinions discussed above resulted in a flawed RFC that did not account for three crucial limitations: ability to interact with supervisors, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and ability to perform at a consistent pace without an unreasonable number and length of rest periods. *See* ECF No. 13, p. 9. When a claimant suffers from mental impairments, as the ALJ found in this case, the ALJ's inquiry must include consideration of "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting." 20 C.F.R. § 416.945(c).

The Commissioner's argument that "any related limitations in concentration and attention were addressed when the ALJ limited Plaintiff to performing SVP one or two, unskilled work" (ECF No. 14, p 10) is not without merit. While a restriction to unskilled work may not necessarily encompass moderate or more severe mental limitations, *see Chapo*, 682 F.3d at 1289-90, the Tenth Circuit has held that a limitation to an SVP of only one or two "adequately took into account [plaintiff's] moderate limitations in concentration, persistence, and pace." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). However, the limitations related to Jimenez's ability to respond appropriately to supervisors and to complete a normal workday and workweek without interruptions are distinguishable. Because the evidence in the record supported, at the

very least, moderate to marked limitations in these areas, the ALJ erred in not clearly relating these impairments to the VE or accounting for them in his RFC findings.

The parties' briefs include a lengthy debate, which I do not detail here, about the significance of Sections I and III of Dr. Frommelt's RFC form. I reject the Commissioner's argument that, because the ALJ's RFC finding aligns with Dr. Frommelt's Section III RFC, Jimenez's challenge has no merit. *See* ECF No. 14, p. 7. Dr. Frommelt's Section III conclusion accounts for some, but not all, of the impairments described in Section I of the form. Because the Section III conclusion did not describe all of the Section I limitations, it was improper for the ALJ to look only to the Section III narrative as the psychologist's opinion regarding mental RFC. I also reject the Commissioner's alternative argument that the ALJ's RFC "reasonably accommodated for the Section I 'moderate' limitations in social interactions by limiting Plaintiff to not dealing with the general public and occasionally dealing with coworkers." ECF No. 14, p. 10. The Tenth Circuit has upheld an ALJ's decision even where the ALJ did not repeat verbatim the Section III narrative in the RFC finding or hypothetical to the VE. *See Carver v. Colvin*, 600 Fed. Appx. 616, 619-20 (10th Cir. 2015) (unpublished). However, this is not a case where "the ALJ sufficiently captured the essence of the Section III functional limitations." *Id.* at 620. Here, the ALJ omitted any mention of the ability to interact with supervisors. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) ("'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" (citation omitted)). Furthermore, he did not explain why he apparently credited Dr. Frommelt's opinion that Jimenez could "sustain ordinary routines" but ignored her finding that Jimenez's ability to complete a normal work schedule was moderately limited. [AR 69-70.] The ALJ also failed to explain his rejection of the consistent opinions of Dr.

17

Madsen, Mr. Monk, and Mr. Jankelow, all of whom indicated that Jimenez would have difficulty completing a regular work schedule. [AR 358, 400, 403.] The ALJ therefore erred in failing to include a resolution of the inconsistencies in the evidence regarding Jimenez's ability to respond appropriately to supervisors and to complete a regular work schedule. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) ("[T]he RFC assessment must . . . [i]nclude a resolution of any inconsistencies in the evidence as a whole. . .").

The Commissioner argues that even if the ALJ should have included more specific limitations regarding interaction with supervisors in the RFC, such an error was harmless. ECF No. 14, p. 15. I disagree. It is likely that the proceedings would have resulted in a different outcome had the ALJ properly weighed the medical source opinions and properly accounted for Jimenez's mental impairments and functional limitations. In particular, the medical source opinions regarding the supervisory limitation, if credited, would have resulted in a different RFC determination, thus producing different testimony from the VE.

Contrary to the Commissioner's assertion, this is not a case where the VE identified jobs a person with those additional limitations could still perform. *Id.*, p. 16. Here, the VE testified that "all jobs involve some interaction with supervisor[s]."[5] In assessing numerical significance, however, the ALJ considered the number of jobs of all three positions combined, not the significance of the number of pamphlet distributor jobs, standing alone. Thus, even if the job of pamphlet distributor was properly identified as suitable for Jimenez, which I do not suggest, I cannot find harmless error on the basis that the number of jobs is significant as a matter of law. *See Allen v. Barnhart*, 357 F.3d 1140, 1144-45 (10th Cir.2004) (refusing to hold as a matter of law that 100 jobs in region was numerically significant); *cf. Trimiar v. Sullivan*, 966 F.2d 1326,

---

[5] The VE did acknowledge that a pamphlet distributor "basically works alone." [AR 515.]

1330 (affirming ALJ's determination that 650 to 900 jobs in region was significant number). As a result, I find the RFC provided by the ALJ is not supported by substantial evidence.

IV. CONCLUSION

The ALJ has had two opportunities to rule in accordance with the substantial evidence in the record and has failed to do so. Further, this case has a prolonged history. Jimenez has been seeking benefits for almost eight years and should not be subject to additional delay. Jimenez is now 54 years old and will be considered a person of advanced age in August 2018. "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorensen v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (citing *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988)). Here, the evidence establishes Jimenez has additional limitations not reflected in the ALJ's RFC. When posed some of those additional limitations, the VE testified that there would be no jobs in the national economy for someone with such limitations. The record in this case fully supports a determination that Jimenez cannot hold full-time employment due to the combination of his physical and mental impairments.

I, therefore, REVERSE the determination of the Commissioner through the ALJ that Jimenez is not disabled. The case is REMANDED to the Commissioner for an immediate award of benefits.

DATED this 2nd day of January, 2018.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE